UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK BUCHANAN,                                      Case No. 18-11563

      Plaintiff                                    Marianne O. Battani
v.                                                  United States District Judge

COMMISSIONER OF SOCIAL                              Stephanie Dawkins Davis
SECURITY,                                           United States Magistrate Judge

      Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On May 18, 2018, plaintiff Mark Buchanan filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this

matter was referred to the undersigned to review the Commissioner's decision

denying Buchanan's claim disability benefits.  (Dkt. 3).  This matter is before the

Court on cross-motions for summary judgment.  (Dkt. 11, 14).

B.    Administrative Proceedings

Buchanan filed the instant claims for period of disability and disability

insurance benefits along with supplemental security income on January 25, 2016,

alleging that he became disabled on November 1, 2015.  (Tr. 15).[1]  The claims

were initially disapproved by the Commissioner on April 13, 2016.  *Id.*  Buchanan

requested a hearing and on April 26, 2017, he appeared with counsel before

Administrative Law Judge (ALJ) Lauren G. Burstein, who considered the case de

novo.  (Tr. 33-62).  In a decision dated July 3, 2017, the ALJ found that Buchanan

was not disabled.  (Tr. 12-28).  Buchanan requested a review of this decision and

on April 12, 2018, the ALJ's decision became the final decision of the

Commissioner when, after the review of additional exhibits,[2] the Appeals Council

denied his request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1]  The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr."

[2]  In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the

summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     FACTUAL BACKGROUND

Buchanan was born in 1965 and was 50 years old on the alleged onset date. (Tr. 17).  He has a high school education and past relevant work as a machinist, pool manager, and swimming coach.  *Id*.  Buchanan stopped working because of his various medical conditions, including depression, anxiety attacks, and panic disorder.  He also indicates that he was let go from his job for being "untrainable" because of his memory issues.  (Tr. 230-231).  Buchanan lives with his wife, daughter and family pets.  (Tr. 564).

The ALJ applied the five-step disability analysis to Buchanan's claim and found at step one that he had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 18).  At step two, the ALJ found that Buchanan's generalized anxiety disorder, mood disorder, panic disorder without agoraphobia, mild cognitive impairment, asthma, left eye ptosis/blepharospasm, headaches, attention deficit hyperactivity disorder, right rotator cuff tendinitis, and history of acromioclavicular tear were "severe" within the meaning of the second sequential step.  (Tr. 18).  At step three, the ALJ found no evidence that Buchanan's

ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

combination of impairments met or equaled one of the listings in the regulations.

(Tr. 18-20).  At step four, the ALJ found that Buchanan could not perform his past

relevant work.  (Tr. 25-26).  The ALJ concluded that Buchanan had the residual

functional capacity to perform a limited range of light work as follows:

> After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except should be in a work environment
> without bright or flashing lights; should be in a clean-air
> work environment, free of pulmonary irritants; should
> avoid concentrated exposure to chemicals, dust, fumes,
> and gases; is limited to "low stress" work, which is
> defined as only simple, work-related decisions, little-to-
> no change in the work setting or routine, and no work at a
> production-rate pace; only routine and repetitive work;
> and is limited to unskilled work with occasional
> interaction with public and coworkers.

(Tr. 20).  At step five, the ALJ denied Buchanan benefits because he could perform

a significant number of jobs available in the national economy.  (Tr. 26-27).

## III.  DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If a claimant finds no relief during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*,

486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty-stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether: (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  (*Id.*).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

        1.      Visual impairment

Buchanan first argues that the ALJ incorrectly concluded that his

blepharospasm[3] is not a severe condition.  In conjunction with this argument,

Buchanan also contends that he is functionally blind as defined in Listing 2.00 and

the ALJ should have concluded as much.  Buchanan complains that the ALJ failed

to discuss whether his blepharospasm rendered him functionally blind.  He points

out that despite treatment with Botox, he still had daily headaches and memory

issues.  He also says that Botox is only temporary and has side effects.  Buchanan

says that his difficulty dealing with stress and sensitivity to light are related to his

blepharospasm, citing information from the National Eye Institute.  (Dkt. 11, p. 8).

He says the blepharospasm has intensified his long history of emotional tension

and need for psychiatric interventions to prevent suicide and cutting.  According to

Buchanan, the combination of all the blepharospasm (constant eyelid drooping,

constant headaches made worse by bright light, and emotional tension) render him

functionally blind.

        In response, the Commissioner first correctly points out that the ALJ did find

that Buchanan's blepharospasm is a severe impairment.  (Tr. 18).  The

_____

    [3] Blepharospasm is "[a] twitching or spasmodic contraction of the orbicularis oculi
muscle due to tics, eyestrain, or nervous irritability."  Taber's® Cyclopedic Medical Dictionary -
23rd Ed. (2017).

Commissioner also challenges Buchanan's contention that he satisfies Listing 2.00. Under Listing 2.00, "visual disorders" are abnormalities of the eye, the optic nerve, the optic tracts, or the brain that may cause a loss of visual acuity or visual fields. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00.A.1.  A loss of visual acuity limits a person's ability to distinguish detail, read, or do fine work, while a loss of visual fields limits the ability to perceive visual stimuli in the peripheral extent of vision. *Id*.  To meet the necessary standard for visual acuity, an individual's "remaining vision in the better eye after best correction [must be] 20/200 or less."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.02.  For visual field, the rule requires that contraction of the visual field of the better eye must satisfy one of the following criteria: (A) The widest diameter subtending an angle around the point of fixation no greater than 20 degrees; or (B) An MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d); or (C) A visual field efficiency of 20 percent or less, determined by kinetic perimetry (see 2.00A7c).  *Id*. at § 2.03.

There does not seem to be any real dispute that Buchanan does not meet the definition for statutory blindness.  The Commissioner contends that blepharospasm is a condition that affects the eyelid, not the eye, optic nerve, optic tracts or brain and thus, cannot satisfy the Listing.  (Tr. 663, 667-69, 671, 803, 837).  Even if true, more importantly, Buchanan has demonstrated no loss in visual acuity or visual

fields in either eye, as required by the Listing.  Testing completed in November

2015 showed that his visual acuity measured 20/25 in the right eye and 20/30 in the

left.  (Tr. 631).  Buchanan's confrontational visual fields were "full" in both eyes.

(Tr. 631-32).  Buchanan indicated to his doctors that his left eyelid drooped, and he

was sensitive to light, but he reported no vision problems. (Tr. 329-30

(photophobia but no blurred vision or visual disturbance), 636 (eyelid drooping,

denies any vision problem), 663 (eyelid drooping, denies vision problem)).  After

evaluating the evidence, a medical consultant opined that Buchanan's left eye

ptosis[4] was "stable" and did not "impair[] his vision to drive[,]" or "affect his

abilities to handle money tasks."  (Tr. 92).  Buchanan makes no real argument that

he satisfies the Listing and the medical evidence make it clear that he does not.

However, Buchanan's argument is focused on functional blindness, not

statutory blindness.  Additional background regarding the nature of blepharospasm

is helpful.[5]  Initially, patients with blepharospasm, which is a neuropathic disorder,

---

[4] "A drooping eyelid is also called ptosis or blepharoptosis. In this condition, the border
of the upper eyelid falls to a lower position than normal. In severe cases, the drooping eyelid can
cover all or part of the pupil and interfere with vision."
https://www.health.harvard.edu/a_to_z/drooping-eyelid-ptosis-a-to-z

[5] The undersigned agrees with the Commissioner's observation that Buchanan's reliance,
on generic descriptions of blepharospasm and associated symptoms from commonly sourced
medical websites is not evidence and does not assist his effort to carry his step-three burden.
While "Courts routinely take judicial notice of medical websites such as the NIH for definitional
purposes," *McLaren-Knipfer v. ArvinMeritor, Inc.*, 876 F.Supp.2d 913, 921 (E.D. Ky. 2012), the
court should decline any invitation to diagnose or evaluate the medical evidence in the record,
thereby succumbing to the temptation to play doctor.  *Alexander v. Comm'r of Soc. Sec.*, 2018
WL 2187996, at *5 (E.D. Mich. Apr. 24, 2018), report and recommendation adopted 2018 WL

experience excessive blinking, "often wrongly attributed to 'dry eyes.'"  *Patton v. Continental Cas. Co.*, 2005 WL 736595, *2, 3 (E.D. Pa. March 31, 2005) (quoting Cardoso & Jankovic, Psychiatric Clinic article; *see also* CCC 00184 ("Other conditions often considered in differential diagnosis include ... 'dry eyes'...."). More sustained involuntary closure of the eyelids develops, causing "functional blindness in 15% of patients."  *Patton*, at *2 (quoting Cardoso & Jankovic, Psychiatric Clinic article).  Many blepharospasm patients also experience lower facial spasms and painful light sensitivity.  *Patton*, at *2 (citing Stanley M. Saulny, M.D., Blepharospasm, Benign Essential, www.emedicine.com/oph/topic202.htm. There is also some suggestion that blepharospasm <u>can</u> cause functional blindness due to the involuntary forced eye closures.  *See e.g.*, *Aldana v. Colvin*, 2016 WL 590208. *4 (D. Kan. Feb. 11, 2016); *Wood v. Chater*, 952 F.Supp. 785, 788-789 (M.D. Fla. 1997).  However, unlike the present circumstances, in those cases, a physician opined that the claimants had "functional blindness."  And here, the medical evidence of record shows that Buchanan did not suffer from involuntary forced eye closures.  Rather, he reported that he was able to open his left eyelid at will.  (Tr. 330) ("he describes this as closing and he has to open it"), 655 ("he is

---

2184354 (E.D. Mich. May 11, 2018) (citing *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).  And, a diagnosis, standing alone, cannot demonstrate that plaintiff's impairments met or medically equaled a listing.  *See* 20 C.F.R. § 404.1525(d); *Haws v. Berryhill*, 2018 WL 2697432, at *4 (W.D. Ky. June 5, 2018) ("To meet a listing in Appendix 1, the medical records regarding the impairment must satisfy both the diagnosis and severity requirements for the listing.") (citing Social Security Ruling 96-5p).

able to raise it up on his own, but it progressively worsens as the day goes on"). It is also notable that Buchanan's blepharospasm improved with treatment because his eyelid drooping improved for three months following a Botox injection. (Tr. 663, 669, 671).

Buchanan's argument is essentially that because he suffers from blepharospasm, he *must* be functionally blind. But he does little to support his argument with medical evidence of record. Further, it is well-established that the mere fact that a claimant suffers from a particular condition or carries a certain diagnosis does not equate to disability or a particular RFC. Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from–thought the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). There is no question that the ALJ found Buchanan's blepharospasm to be a "severe" impairment, however, "[a] claimant's severe impairment may or may not affect his or her functional capacity to work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004). "The regulations recognized that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217

Fed. Appx. 425, 429 (6th Cir. 2007).  Thus, the mere existence of any severe

condition from which Buchanan may have suffered does not necessarily establish

any functional limitation or disability.  Buchanan has not offered any evidence

suggesting that he is more limited or restricted than the ALJ found in his RFC

based on his blepharospasm.

        2.      Hypothetical question

Buchanan also argues that he cannot do the jobs identified by the vocational

expert because he is functionally blind.  That is, he cannot visually inspect items

for 8 hours per day if he is functionally blind.  He also says that even if he is only

functionally blind in one eye, his headaches preclude him from working all day.

In response, the Commissioner asserts that Buchanan's arguments are really

another challenge to the residual functional capacity finding itself.  The

undersigned agrees and Buchanan's claim of error in this regard fails because he

has not identified a medical opinion or other medical evidence suggesting that he is

more limited than found to be by the ALJ.  The ALJ found that due to left eye

ptosis/blepharospasm with headaches, Buchanan must avoid bright or flashing

lights.  (Tr. 20, 22).  Significantly, no treating source provided an opinion that

Buchanan had any specific functional limitations caused by his blepharospasm or

was more limited than found by the ALJ and Dr. Chiambretti, the state agency

reviewing physician who evaluated Buchanan's physical impairments.  (Tr. 94);

*see Kimbrough v. Comm'r of Soc. Sec.*, 2010 WL 3862710, at *7 (E.D. Mich. Aug. 19, 2010) ("As the ALJ noted in his decision, '[a]s for the opinion evidence, there are no treating source opinions.' Under the circumstances, the ALJ properly relied on the opinions of the state agency examiners.") (citations omitted), aff'd, 2010 WL 3842159 (E.D. Mich. Sept. 28, 2010); *Toins v. Comm'r of Soc. Sec.*, 2014 WL 6389582, at *15 (E.D. Mich. Nov. 14, 2014) (upholding ALJ's RFC finding where "plaintiff [failed to point to] record evidence that any of her treating physicians made . . .findings as related to [p]laintiff's functional limitations," and "plaintiff has not provided an explanation as to how the ALJ erred in considering the non-treating source's opinion absent any other treating-source opinion").  Accordingly, the undersigned finds no basis to disturb the ALJ's assessment of Buchanan's physical impairments and limitations or to conclude that the hypothetical question was flawed.

3.     Mental impairments

Buchanan next argues that the ALJ's conclusion that he was only moderately impaired in his ability to understand, remember, and apply information is not supported by substantial evidence.  Buchanan maintains that he has severe memory problems and his memory is slowly getting even worse.  (Tr. 49, 607).  He cannot remember conversations he had five minutes ago, he will start an activity and then forget what he was trying to do, and he must write everything down or he will

forget it.  *Id.*  Buchanan also disputes the ALJ's finding that he had only moderate limitations in adapting and managing himself.  While the ALJ acknowledged his poor ability to handle stress and changes in routine, Buchanan maintains that the ALJ does not consider the full extent of his inability to cope with any stress.  More specifically, Buchanan suffers from: stress induced panic attacks (Tr. 49); due to stress he only sleeps three to four hours a night (Tr. 52-53; Tr. 619); he experiences violent dreams (Tr. 692); he engages in cutting when stressed (Tr. 55, 639); he attempted suicide (Tr. 746); his hands shake due to his stress and this causes difficulty holding onto things (Tr. 57; Tr. 631).  Buchanan argues that his inability to accomplish anything while under stress makes his stress completely debilitating.

In response, the Commissioner notes that Buchanan's moderate limitations in these areas were accommodated by limiting him to only unskilled work that is routine and repetitive in nature; with "low stress," simple, work-related decisions; little-to-no change in the work setting or routine; and no work at a production-rate pace.  (Tr. 20).  The Commissioner maintains that these limitations are consistent with the medical opinions and mental examinations in the record.

The undersigned agrees with the Commissioner.  The ALJ gave great weight to the assessment provided by Rom Kriauciunas, Ph.D., a medical consultant who reviewed the record evidence.  (Tr. 24-25, 109-111).  The ALJ agreed with the psychologist that, "due to [Buchanan's] multiple mental impairments with a

lengthy history of treatment for those symptoms, he is incapable of anything more than simple, routine, and repetitive work.  Additionally, because of the cognitive impairment, he can only make simple, work-related decisions, have little-to-no change in the work setting or routine, and never work at a production-rate pace." (Tr. 25-26, 109-111).  Moreover, as the Commissioner explains, the tests performed to assess Buchanan's mental functioning are generally consistent with the limitations assessed by the ALJ.  For example, the neurologist's notes consistently show that Buchanan's memory was normal and his mini mental status examinations (MMSE) yielded scores measuring between 27/30 to 30/30.  (Tr. 23, 609, 613-14, 638, 648, 652, 657, 661, 664-65, 668-69, 672-73).  A neurocognitive evaluation performed by Marina Novikova, D.O., in November 2016 showed only a mild cognitive impairment.  (Tr. 23-24, 786).  Dr. Novikova acknowledged that there were "some inconsistencies" between the cognitive testing and Buchanan's "very stable MMSE [scores] over the last 6 months as documented by outside neurologist[, which] go against neurodegenerative disorder."  (Tr. 788). Significantly, no treating source provided an opinion that Buchanan had any specific functional limitations caused by his mental impairments or was more limited than as found by the ALJ and Dr. Kriauciunas.  *See Kimbrough v. Comm'r of Soc. Sec*., 2010 WL 3862710, at \*7 (E.D. Mich. Aug. 19, 2010) ("As the ALJ noted in his decision, '[a]s for the opinion evidence, there are no treating source

opinions.' Under the circumstances, the ALJ properly relied on the opinions of the state agency examiners.") (citations omitted), aff'd, 2010 WL 3842159 (E.D. Mich. Sept. 28, 2010); *Toins v. Comm'r of Soc. Sec.*, 2014 WL 6389582, at *15 (E.D. Mich. Nov. 14, 2014) (upholding ALJ's RFC finding where "plaintiff [failed to point to] record evidence that any of her treating physicians made . . .findings as related to [p]laintiff's functional limitations," and "plaintiff has not provided an explanation as to how the ALJ erred in considering the non-treating source's opinion absent any other treating-source opinion"). Thus, the undersigned finds no basis to disturb the ALJ's assessment of Buchanan's mental impairments and limitations.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 9, 2019                           s/Stephanie Dawkins Davis
                                               Stephanie Dawkins Davis
                                               United States Magistrate Judge

20

## **CERTIFICATE OF SERVICE**

I certify that on <u>August 9, 2019</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left: 40%;">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>